[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 954 
This petition for a writ of mandamus relates to an action pending in the Circuit Court of Barbour County. The petition presents three questions: first, whether Barbour County is a proper venue for a personal injury action involving claims arising out of an insurance policy sold in Montgomery County; second, whether under § 6-3-5, Ala. Code 1975, the presence of life insurance policyholders in a county constitutes the insurer's "doing business" in that county for purposes of venue; and third, if the answer to the first two questions is yes, whether this case should be transferred to Montgomery County under the doctrine of forum non conveniens, § 6-3-21.1, Ala. Code 1975.
We hold that under § 6-3-5, Ala. Code 1975, the presence of life insurance policyholders in a county constitutes the insurer's "doing business" in that county for purposes of venue, and that Barbour County is a proper venue for the plaintiff's action. However, we agree with the defendants that this case should be transferred to Montgomery County under the doctrine of forum non conveniens. We therefore grant the writ.
In 1984, George Wayne Smoot, an employee of the Alabama Highway Department and a resident of Montgomery County, purchased a life insurance policy from the New England Mutual Life Insurance Company. Smoot alleges that at the time of the purchase W. Lee Steinhilber, the insurance agent who sold the policy, told him that if he made the payments on the policy for nine years, he would not have to make any further payments on the policy. Smoot moved to Barbour County in 1989. In 1994, ten years after the policy was purchased, Smoot was informed by New England Mutual Life that he had to continue making payments.
On September 27, 1994, Smoot sued in the Circuit Court of Barbour County, alleging claims of fraud, negligence, suppression, and wanton hiring and supervision of Steinhilber. In its response to Smoot's complaint, New England Mutual Life argued that it was a foreign corporation and that venue of this action was improper in Barbour County, or, alternatively, that the action should be moved to Montgomery County on the grounds of forum non conveniens. New England Mutual Life then, on October 24, 1994, filed a motion to dismiss or to transfer the action; this motion was denied one week later by the trial court. On December 18, 1994, the plaintiff filed a brief in opposition to the company's motion to dismiss or transfer; this brief contained a list of 22 New England Mutual Life policyholders currently residing in Barbour County, to counter the insurer's statement that it did not do business in Barbour County. New England Mutual Life then, on January 30, 1995, filed a renewed motion to dismiss or transfer. After hearing oral argument on this matter on March 23, 1995, the trial court denied the renewed motion. This petition for the writ of mandamus followed.
A writ of mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Where the exercise of an inferior court's discretion is involved, the writ of mandamus generally may be issued only to compel the exercise of its discretion; it may not be issued to control or review the exercise of discretion except where an abuse of discretion is shown. Exparte Ford Motor Credit *Page 955 Co., 561 So.2d 244 (Ala.Civ.App. 1990), citing, Ex parteAuto-Owners Ins. Co., 548 So.2d 1029 (Ala. 1989).
In its petition, New England Mutual Life contends that it is a foreign corporation, under § 6-3-7, Ala. Code 1975, and as such may be sued only in a county in which it does business by agent. Because it has no agent in Barbour County, it contends that venue is proper only in Montgomery County, where the policy was purchased and the wrongful act allegedly took place. The company also contends that it is not subject to the venue provisions of § 6-3-5, Ala. Code 1975 (which govern actions against insurers), because the plaintiff here has filed a personal injury action, and that § 6-3-5 exclusively governs contract actions against insurers, and no other kind. New England Mutual Life argues that the plaintiff is alleging a misrepresentation in the purchase of the policy, not that he has been denied benefits under the policy or that any terms of the policy have been breached, and thus § 6-3-5 does not apply. In the alternative, New England Mutual Life contends that §6-3-21.1, Ala. Code 1975, should operate to mandate transfer when a plaintiff subsequently moves from the county where the alleged wrongful act occurred and no other witnesses or documents are located in the county to which the plaintiff has moved.
We disagree with New England Mutual Life's assertion that the venue provisions of § 6-3-5 exclusively govern contract actions against insurers, and no other kind. That section reads:
 "(a) Any person, firm or corporation that issues policies or certificates of insurance of any kind shall be subject to a civil action on any such policy or certificate in the county where the holder of the policy or certificate resides . . .; provided, however, that an action against a foreign insurance corporation shall be commenced only in a county where it does business."
 "(b) For the purpose of this section, any of the following acts effected by mail or otherwise shall constitute doing business within the county:
 "(1) The making, issuance, or delivery of contracts of insurance to residents of the county;
 "(2) The solicitation of applications for such contracts;
 "(3) The collection of premiums, membership fees, assessments, or other considerations for such contracts; or
 "(4) Any other transaction of insurance business."
Nothing in this statute suggests that it is limited in its application solely to actions arising from a breach of an insurance contract; the statute states that it governs "civil action[s]." Additionally, no provision in § 6-3-7, Ala. Code 1975, states that it shall govern personal injury actions against insurers and that all insurance contract actions are governed exclusively by § 6-3-5. The rules of statutory construction require that the words used in a statute be given their plain, natural, ordinary, and commonly understood meaning. Alabama Farm Bureau Mut. Cas. Ins. Co. v. City ofHartselle, 460 So.2d 1219, 1224 (Ala. 1984). Accordingly, this Court must look to see if New England Mutual Life, a foreign corporation, "does business" in Barbour County within the meaning of § 6-3-5, to determine if venue in Barbour County is proper.
In his brief in opposition to New England Mutual Life's motion to dismiss or transfer the action, the plaintiff listed 22 New England Mutual Life policyholders currently residing in Barbour County. The record indicates that in 1994, for these 22 policyholders, New England Mutual Life sent billing statements to Barbour County and received payments through the mail from Barbour County. As a result, we conclude that under §6-3-5(b)(3), these actions constitute "doing business" in Barbour County at the time the action was filed, and we therefore conclude that venue is proper there.
New England Mutual Life argues that the bare act of mailing notices and statements to existing policyholders in Barbour County does not constitute doing business there, citing Exparte SouthTrust Bank, 619 So.2d 1356 (Ala. 1993), wherein this Court held that *Page 956 
a bank's attempts to collect on a delinquent loan by mailing notices and instituting garnishment proceedings in a county were insufficient to constitute doing business there. We find the SouthTrust case distinguishable; at issue in that case was whether venue was proper under the general venue provisions of § 6-3-7, Ala. Code 1975, not the specific venue provisions of §6-3-5. We also note that SouthTrust dealt with an isolated transaction, not the systematic correspondence and collection of premiums found here. Nor are we persuaded by New England Mutual Life's assertion that none of the policyholders currently residing in Barbour County purchased their policies in 1994, the year the action was filed; "doing business," within the meaning of § 6-3-5, is not limited in its application to the sale of insurance contracts alone.
We now turn to New England Mutual Life's contention that § 6-3-21.1, Ala. Code 1975, mandates a transfer of this action. New England Mutual Life argues that under this Code section, setting out what is commonly known as the doctrine of forum non conveniens, a transfer is warranted in this case, given that the plaintiff moved from the county where the alleged wrongful act occurred and that no other witnesses or documents are located in the county to which the plaintiff moved.
The doctrine of forum non conveniens was formally adopted in this state and codified at § 6-3-21.1, Ala. Code 1975; the doctrine has a field of operation only where an action is commenced in a county in which venue is appropriate. Transfers under this Code section are within the discretion of the trial judge. The purpose of the doctrine is to prevent the waste of time, energy, and money and also to protect witnesses, litigants, and the public against unnecessary expense and inconvenience. Ex parte Townsend, 589 So.2d 711, 714 (Ala. 1991). Section 6-3-21.1(a) reads as follows:
 "(a) With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein."
The burden of proof under this doctrine is on the defendant to prove to the satisfaction of the trial court that the defendant's inconvenience and expense of defending the action in the venue selected by the plaintiff are such that the plaintiff's right to choose the forum is overcome. Stated differently, the transferee forum must be significantly more convenient than the forum in which the action is filed by the plaintiff, to justify transfer. Ex parte Townsend, 589 So.2d at 714.
After reviewing the briefs and the evidence submitted by both sides, we agree with the petitioners that this action should be transferred to the Circuit Court of Montgomery County, and that the Barbour County Circuit Court's refusal to transfer the case constituted an abuse of discretion. It is undisputed by the parties in this case that no events giving rise to this action took place in Barbour County; the alleged wrongful act involved a Montgomery County insurance agent and an out-of-state insurer with its general agency in Montgomery County. All documents pertaining to this transaction are located in the insurer's general agency in Montgomery County, and 14 out of 15 witnesses expected to testify at trial are located there, the 15th being the plaintiff.
Most significantly, there are currently 10 identical actions — brought by former coworkers of Smoot and involving the same attorneys and alleging the same wrongful act — pending in the Circuit Court of Montgomery County. Some, if not all, of the plaintiffs and witnesses in those cases will testify in this case, and much, if not all, of the same evidence will be presented. All of these witnesses would be forced to travel from Montgomery County to Barbour County for a trial in the plaintiff's case, which this Court finds to be both burdensome and unnecessarily expensive. Accordingly, we hold that the Barbour Circuit Court's refusal to transfer the case to Montgomery County constituted an abuse of discretion, and we order that the case be transferred to the *Page 957 
Circuit Court of Montgomery County pursuant to § 6-3-21.1, Ala. Code 1975.
WRIT GRANTED.
ALMON, SHORES, HOUSTON, INGRAM, and COOK, JJ., concur.