677 So.2d 204 (1996)
Ex parte Mary L. GAUNTT, et al.
(Re Mary L. GAUNTT, et al. v. UNITED INSURANCE COMPANY OF AMERICA, et al.).
1940591.
Supreme Court of Alabama.
February 9, 1996.
Order Overruling Second Application for Rehearing May 3, 1996.
*206 Fred D. Gray of Gray, Langford, Sapp, McGowan, Gray & Nathanson, Tuskegee; Allen W. Howell of Shinbaum & Howell, Montgomery, for Petitioners.
Warren B. Lightfoot, Mac M. Moorer and William H. Brooks of Lightfoot, Franklin, White & Lucas, Birmingham, for Respondents.
Phillip E. Stano, Washington, DC; Cathy S. Wright and Sarah E. Yates of Maynard, Cooper & Gale, P.C., Birmingham, for Amicus Curiae American Council of Life Insurance.

On Application for Rehearing
SHORES, Justice.
The opinion issued on July 14, 1995, is withdrawn and the following opinion is substituted therefor.
A judge of the Macon Circuit Court has ordered that 16 pending civil actions filed in Macon County against United Insurance Company of America ("United"), Unitrin, Inc., United Casualty Insurance Company of America, Union National Life Insurance Company, and Union National Fire Insurance Company be transferred to Shelby County for trial. The plaintiffs, whose actions are based on various contract and fraud claims, have petitioned for a writ of mandamus directing the trial judge to set aside his transfer orders. None of the plaintiffs resides in Macon County, although United does business there. The plaintiffs reside in the central Alabama counties of Elmore, Montgomery, Chilton, and Tallapoosa.
The defendants filed a motion to transfer the cases to Shelby County, based on allegations of improper venue and premised upon the assertion that United's regional manager, George McDonald, resides in Shelby County. The defendants relied on and cited § 6-3-7, Ala.Code 1975,[1] and Ex parte Macon County Greyhound Park, Inc., 634 So.2d 997 (Ala. 1993) (venue proper in county where alleged wrongful act occurred, not where resulting nonbodily injuries occurred). In the alternative, the defendants moved for a transfer pursuant to the doctrine of forum non conveniens as codified at Ala.Code 1975, § 6-3-21.1.
The plaintiffs argued that the clause in § 6-3-5 providing that "an action against a foreign insurance corporation shall be commenced only in a county where it does business" makes venue proper in Macon County, where United, a foreign corporation, does *207 business. The trial judge concluded that § 6-3-5 did not establish proper venue in Macon County, and he transferred the cases. His transfer order, dated December 22, 1994, reads as follows:
"All pending motions with the exception of the motion for class certification were set for argument. Prior to argument, the Court stated that it might be appropriate to dispose of the venue question since the remaining motions would become moot as to the Circuit Court of Macon County in the event venue was transferred. It is stipulated and agreed among the parties that venue is proper in Macon County for the following cases subject to a motion for change of venue based on the concept of forum non conveniens:
"Bloodsaw v. United Ins. Co. of America, et al. CV-93-166; Floyd v. United Ins. Co. of America, et al. CV-93-136; Samuels v. United Ins. Co. of America, et al. CV-93-135; Smith v. United Ins. Co. of America, et al. CV-93-180; Torbert v. United Ins. Co. of America, et al. CV-93-146.
"For purposes of argument it is also stipulated and agreed that none of the other plaintiffs in the above-styled causes reside in Macon County and that United Insurance Company of America does business in Macon County.
"The above-styled causes sound in fraud. Counsel for plaintiffs argue that Section 6-3-5(a), Code of Alabama 1975, makes venue proper in Macon County. Section 6-3-5(a), provides:
"`Any person, firm or corporation that issues policies or certificates of insurance of any kind shall be subject to a civil action on any such policy or certificate in the county where the holder of the policy or certificate resides, and the summons may be executed by serving a copy of the summons and complaint upon any officer or agent of the insurer; provided, however, that an action against a foreign insurance corporation shall be commenced only in a county where it does business.'
"Counsel for defendants argue that Section 6-3-5(a) has no application in this case since the actions are not `action[s] on any such policy or certificate' and that the general venue rules as to fraud apply. Counsel for plaintiffs argue that the portion following the semi-colon makes venue proper in Macon County and that there should be no distinction drawn between actions ex delicto and [actions] ex contractu. Plaintiffs cite the opinion of the Alabama Supreme Court in [Ex parte Bloodsaw, 648 So.2d 553 (Ala.1994)], as being dispositive. One of the causes of action in that case is for bad faith refusal to pay. Consequently, at least a portion of that case sounds in contract and is therefore distinguishable from the fraud cases. The Court is of the opinion that the defendants are correct in their argument and consequently their various motions for change of venue are due to be and hereby are granted. Defendants have indicated that their preference of venue is Shelby County. The Court is of the opinion that defendants are entitled to have venue transferred to the county of their preference.
"It is, therefore, ORDERED, ADJUDGED and DECREED that with the exception of the four cases cited in the body of this order, venue of the above-styled cases is transferred to Shelby County. The Circuit Clerk of Macon County shall transfer all documents necessary to perfect said transfer...."
The writ of mandamus is an extraordinary remedy. One seeking it must show: "(1) a clear legal right ... to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991); Ex parte Johnson, 638 So.2d 772, 773 (Ala.1994). The writ of mandamus will issue to correct an erroneous ruling on a motion to transfer a case. Elmore County Comm'n v. Ragona, 540 So.2d 720 (Ala.1989). The essential question in our consideration of a petition for the writ of mandamus in this context is whether the county in which the action was brought was a proper venue. Id.; Ex parte *208 Wilson, 408 So.2d 94 (Ala.1981); Ex parte Maness, 386 So.2d 429 (Ala.1980).
Whether Macon County is a proper venue for these cases depends on whether a complaint alleging both contract and tort claims against a foreign corporation may be brought in a county in which it does business, even though the plaintiff does not reside there. These plaintiffs are bringing contract and fraud actions against foreign insurance corporations and their agents, directors, and officers. Accordingly, this Court considers § 6-3-5, establishing venue for a civil action by a policyholder against an insurer; § 6-3-7, establishing venue rules for actions against foreign and domestic corporations; and Amendment No. 473, Ala. Const.1901, equating domestic and foreign corporations for purposes of venue.
The plaintiffs, relying on Ex parte City of Fayette, 611 So.2d 1032 (Ala.1992), overruled on other grounds, Ex parte Alabama Power Co., 640 So.2d 921, 924 (Ala.1994); and Ex parte Bloodsaw, 648 So.2d 553 (Ala.1994), argue that venue is proper in Macon County or in any other county where a foreign corporate defendant does business. Neither of these cases is authority for this proposition, and the plaintiffs' argument fails to acknowledge the significance of Amendment No. 473. The defendants argue that each complaint alleges only personal actions and that § 6-3-7, Ala.Code 1975, makes venue proper only (1) where the plaintiff resides, if the defendant does business there, or (2) where the wrongful act occurred. This argument fails because the complaints allege contract as well as "personal injury" claims under § 6-3-7, and contract claims are not subject to the personal injury clause of § 6-3-7. A review of the statutory history is helpful in resolving this issue.

A. History
In 1886, Alabama's corporate venue statute, codified at Ala.Code 1886, § 2642, provided that "[a] foreign or domestic corporation may be sued in any county in which it does business by agent." The statute was first passed on February 13, 1879. Ala.Acts 1879, No. 166, p. 197. In Montgomery Iron Works v. Eufaula Oil & Fertilizer Co., 110 Ala. 395, 20 So. 300 (1896), the Court held that the statute was not mandatory: the language did not exempt a corporation from being sued, in an action not in contract, in a county in which it was not doing business by agent. The Court construed this statute in pari materia with § 2640, prescribing that personal actions, other than those on contracts, could be brought "in the county in which the act or omission complained of may have been done."
The corporate venue statute appeared unchanged as § 4207, Ala.Code 1896, but the legislature amended the venue provision in 1903 by adding "but all actions for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence." Ala.Acts 1903, No. 174, p. 182, codified at Ala.Code 1907, § 6112. The statute did not distinguish between foreign and domestic corporations. The statute required that a personal injury action against a foreign corporation, as well as one against a domestic corporation, be brought in the county in which the injury occurred or in the county of the plaintiff's residence if the corporation did business by agent there. Alabama Great Southern Ry. v. Ambrose, 163 Ala. 220, 50 So. 1030 (1909) (action by administrator based on personal injury resulting in death to his intestate proper only "in county where the injury occurred, or the county where the plaintiff resides"), overruled, Ex parte Western Union Telegraph Co., 200 Ala. 496, 76 So. 438 (1917). Other cases construing the statute in this period were American Coal Corp. v. Roux, 192 Ala. 574, 68 So. 970 (1915), holding that, for personal injury actions, § 6112 made venue proper in the county where the injury occurred, regardless of whether the corporation did business by agent in that county and regardless of plaintiff's residence; and Drennen Motor Car Co. v. Evans, 192 Ala. 150, 155-56, 68 So. 303, 305 (1915), holding that venue of all personal actions, other than those for personal injuries, against a domestic corporation, is: (1) in the county of the residence or of the situs of the corporation; or (2) in the county where such corporation does business by agent; or *209 (3) in the county in which the act or omission complained of may have been done or may have occurred.
In Ex parte Western Union Telegraph Co., 200 Ala. 496, 76 So. 438 (1917), this Court held that, because the Alabama Constitution of 1901, § 232, expressly provided for statewide venue of actions against foreign corporations,[2] the legislature had no power to limit or expand venue in personal injury actions against a foreign corporation to the county of the injury or to the county of the plaintiff's residence, thus nullifying the statutory amendment of 1903. Later, in 1919, the legislature again amended the statute to provide that a domestic or foreign corporation could be sued not only "in any county in which it does business by agent," but also in any county in which it "was doing business by agent at the time the cause of action arose." Ala.Acts 1919, No. 254, p. 240. Codified at Ala.Code 1923, § 10471, then, was the following (with the modified portions emphasized):
"A foreign or domestic corporation may be sued in any county in which it does business by agent, or was doing business by agent at the time the cause of action arose; but all actions against a domestic corporation for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence."
The language of the primary clause still conflicted with § 232, however. In Bolton v. White Motor Co., 239 Ala. 168, 194 So. 510 (1940), this Court held that § 232 limits venue of actions against a foreign corporation to a county where the corporation is doing business at the time the action is brought and service is had. Bolton, 239 Ala. at 171, 194 So. at 512. Accordingly, the statute as reenacted at Ala.Code 1940, Title 7, § 60, read (with the modified portion emphasized):
"A foreign corporation may be sued in any county in which it does business by agent, and a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose; but all actions against a domestic corporation for personal injuries must be brought in the county where the injury occurred or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence."
In 1955, the legislature adopted an act applicable only to insurers. Ala.Acts 1955, No. 365, p. 886. The act was codified at Ala.Code 1940 (Recomp.1958), Title 7, § 56(1):
"Any person, firm, or corporation that issues policies or certificates of insurance of any kind shall be suable on any such policy or certificate in the county where the holder of the policy or certificate resides, and the summons may be executed by serving a copy of the summons and complaint upon any officer or agent of the insurer; provided, that a foreign insurance corporation shall be sued only in a county where it does business. For the purpose of this section, any of the following acts effected by mail or otherwise shall constitute doing business within the county: (1) The making, issuance, or delivery of contracts of insurance to residents of the county; (2) the solicitation of applications for such contracts; (3) the collection of premiums, membership fees, assessments or other considerations for such contracts; (4) any other transaction of insurance business."
Section 2 of the Act provided that "[a]ll laws or parts of laws which conflict with this Act are repealed." The general venue statute for corporations remained unchanged.
The two statutes have been changed slightly by the legislature since 1958. The general corporate venue statute, codified at Ala.Code 1975, § 6-3-7, provides:
"A foreign corporation may be sued in any county in which it does business by agent, and a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose; provided, that all actions against a domestic corporation for personal injuries must *210 be commenced in the county where the injury occurred or in the county where the plaintiff resides if such corporation does business by agent in the county of the plaintiff's residence."
(Emphasis added; the "provided, that" replaced "but"). The insurance corporation statute (currently § 6-3-5) provides:
"(a) Any person, firm or corporation that issues policies or certificates of insurance of any kind shall be subject to a civil action [this phrase replaces `shall be suable'] on any such policy or certificate in the county where the holder of the policy or certificate resides, and the summons may be executed by serving a copy of the summons and complaint upon any officer or agent of the insurer; provided, however, [the emphasized word was added] that an action against a foreign insurance corporation shall be commenced only in a county where it does business.
"(b) For the purpose of this section, any of the following acts effected by mail or otherwise shall constitute doing business within the county:
"(1) The making, issuance, or delivery of contracts of insurance to residents of the county;
"(2) The solicitation of applications for such contracts;
"(3) The collection of premiums, membership fees, assessments, or other considerations for such contracts; or
"(4) Any other transaction of insurance business."
(Emphasis added).
Significant to the operation of these statutes is Amendment No. 473, amending § 232 of the Alabama Constitution; that amendment was ratified April 1, 1988. This amendment equates domestic and foreign corporations for purposes of venue. See Ex parte Allen, 655 So.2d 962 (Ala.1995); Ex parte Townsend, 589 So.2d 711 (Ala.1991); Ex parte Southern Ry., 556 So.2d 1082, 1091 (Ala.1989). With the language added by the 1988 amendment emphasized, § 232 of the Constitution now provides:
"No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. Any foreign corporation, whether or not such corporation has qualified to do business in this state by filing with the secretary of state a certified copy of its articles of incorporation or association, may be sued only in those counties where such suit would be allowed if the said foreign corporation were a domestic corporation. The legislature shall, by general law, provide for the payment to the state of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this state. Strictly benevolent, educational, or religious corporations shall not be required to pay such a tax."
(Emphasis added). This emphasized language replaced a sentence reading "Such corporation may be sued in any county where it does business, by service of process upon an agent anywhere in the state." For a discussion of the history of Amendment No. 473, see Robert D. Hunter, Alabama's 1987 Tort Reform Legislation, 18 Cumb.L.Rev. 281 (1988).

B. Application to these Cases
Venue, as distinguished from jurisdiction, is a legislative determination based upon the presumed convenience of the parties. Ingram v. Omelet Shoppe, Inc., 388 So.2d 190 (Ala.1980). In Alabama, "the venue of actions is governed by statute, and only in the event of inconsistency in statutory provisions, by Rule 82." Ex parte Lashley, 596 So.2d 890, 891 (Ala.1992).[3] We do not find an inconsistency, but, even if we did, we would note the mandate of § 6.11 of the Judicial Article, which requires this Court to promulgate rules of procedure that "shall not *211 abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein." We find no inconsistency in the operation of §§ 6-3-5 and 6-3-7 that would require us to refer to procedural rules.
Section 6-3-5 is specifically related to insurance companies. This specific statute would apply exclusively to these cases if it conflicted with § 6-3-7, the general corporate venue statute. See Crawford v. Springle, 631 So.2d 880 (Ala.1993) (where statutes in pari materia are general and specific, the more specific statute controls the more general statute). This Court finds no conflict between § 6-3-5 and § 6-3-7; accordingly, these corporate venue statutes should be read in pari materia. Cf. Ex parte New England Mutual Life Insurance Co., 663 So.2d 952 (Ala.1995) (holding that § 6-3-5 does not exclusively govern contract actions against an insurance corporation and that § 6-3-7 does not exclusively govern personal injury actions against an insurance corporation); Opinion of the Justices No. 334, 599 So.2d 1166 (Ala.1992) (statutes must be construed together in light of their application to the same general subject matter); Associated Grocers of Alabama v. Graves Co., 272 Ala. 158, 130 So.2d 17 (1961) (construing predecessor of § 6-3-7 in pari materia with predecessor of § 6-3-2). This holding conforms with the legislative intent: in 1955, the legislature enacted § 6-3-5 and provided that inconsistent laws would be repealed; yet, § 6-3-7 remained unmodified and continues to be recodified. We conclude that the legislature intended these statutes to operate together, and not either to the exclusion of the other. Ex parte Jones Mfg. Co., 589 So.2d 208 (Ala.1991) (statutes should be construed together so as to harmonize provisions as far as practical).
In construing these statutes together, this Court observes that fundamental to statutory analysis is the principle that each part of the statute be given effect. Michael v. Beasley, 583 So.2d 245 (Ala.1991). Amendment No. 473 changes the application of the corporate venue statutes. Each section, however, has some field of operation. See Ex parte Employees' Retirement System of Alabama, 644 So.2d 943 (Ala.1994) (in applying the clear meaning of a statute, a court must look at the entire statutory scheme rather than at isolated phrases or clauses); Robinson v. State, 361 So.2d 1113 (Ala.1978) (it cannot be presumed that the legislature used language without any meaning or application).

1. Section 6-3-5
The language of § 6-3-5, which was first passed in 1955 and which has been amended only technically since, does not reflect a legislative intent to restrict a plaintiff's choice of venue. The fact that § 6-3-5 was intended to be supplemental to § 6-3-7 can be seen by the title: "Relating to civil remedies and procedure: to provide further for venue in actions on policies or certificates of insurance." Ala.Acts 1955, No. 365, p. 886 (emphasis added). This intent is also evident in the language of the statute. Ala.Code 1940 (Recomp.1958), Title 7, § 56(1), provided:
"Any person, firm, or corporation that issues policies or certificates of insurance of any kind shall be suable on any such policy or certificate in the county where the holder of the policy or certificate resides, and the summons may be executed by serving a copy of the summons and complaint upon any officer or agent of the insurer; provided, that a foreign insurance corporation shall be sued only in a county where it does business."[4]
The use of the word "shall" does not require the plaintiff to bring an action only in her county of residence. The grammatical structure of the statute shows that "shall be suable" is the predicate and that its subject is "any person, firm or corporation." The word "shall," therefore, does not reflect an intention *212 to restrict the plaintiff. If this statute were intended to be exclusive, the legislature would have used the language "shall be suable... only in the county where the holder of the policy or certificate resides," or would have stated that actions against insurers "must be commenced ... in the county where the holder of the policy or certificate resides."
In construing § 6-3-5 in pari materia with § 6-3-7, it is important to recognize that, in 1955, § 232 of the Constitution both allowed actions against a foreign corporation in any county where it did business by agent[5] and also prohibited the legislature from limiting or expanding venue of actions against a foreign corporation. Ex parte Western Union Telegraph Co., 200 Ala. 496, 76 So. 438 (1917). Also significant is the fact that in 1955 this Court interpreted the phrases "does business" in § 232 of the Constitution and "does business by agent" in the precursor of § 6-3-7 restrictively,[6] with the effect that a corporation needed an established presence in a county for venue to be proper there. Harrub v. Hy-Trous Corp., 249 Ala. 414, 31 So.2d 567 (1947) (a foreign corporation establishes presence in the state or a county by the presence of officers or agents therein performing its corporate functions); Bolton v. White Motor Co., 239 Ala. 168, 194 So. 510 (1940) (solicitation of business in Tuscaloosa County by agents of foreign corporation residing in Jefferson County does not constitute "doing business by agent" in Tuscaloosa County for purposes of venue); Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 So. 941 (1894) (accord, Harrub, supra). With these points in mind, one can see the enactment of § 6-3-5 as intended to supplement, not to replace, § 6-3-7 as to corporate insurers. Section 6-3-5 affected venue of actions against domestic corporate insurers by allowing proper venue in the county of the policyholder's residence under an expanded concept of whether the insurer was doing business in that county, rather than the restrictive concept of "doing business by agent" applied under the precursor of § 6-3-7.[7] The legislature acknowledged the limitation of § 232 on its power to expand or limit venue of actions against foreign corporations by adding the proviso reading "that an action against a foreign insurance corporation shall be commenced only in a county where it does business." Thus, by allowing an action against an insurer in the county of the policyholder's residence, the legislature was not purporting to allow an action against a foreign corporation other than in a county in which it does business.
Section 6-3-5 merely provides that venue shall be proper in the county of the plaintiff's residence, with the exception that venue of an action against a foreign insurance corporation is proper only where that corporation does business. As previously noted, the proviso regarding foreign insurance corporations indicates the legislature's acknowledgment of *213 § 232 of the Alabama Constitution. At most, this proviso expanded venue of actions against a foreign corporate insurer to the extent that the precursor of § 6-3-7 purported to limit venue of actions against a foreign corporation to those counties in which it did business "by agent"; this is because the proviso of § 6-3-5 does not include the phrase, "by agent." This change in the language might have been purposeful: the language of § 232 does not require the restrictive interpretation given the phrase "by agent" in § 6-3-7. Cf. Ex parte Reliance Ins. Co., 484 So.2d 414, 418 (Ala.1986) (legislative use of "by agent" adds nothing to meaning of § 232 but rather expresses the implicit principle in § 232 "that a corporation, being but a legal entity, cannot do business except by agent"). Because the legislature was prohibited by § 232 from limiting venue against foreign corporations, the precursor of § 6-3-7 could not have limited such venue by addition of the phrase "by agent" to § 232's use of the phrase "does business." In short, the 1955 legislation did not affect venue of actions against foreign corporate insurers, except perhaps to authorize a somewhat more expansive interpretation of what constituted a corporation's "doing business" in a county.
This construction does not conflict with Amendment No. 473, equating foreign and domestic corporations for purposes of venue, because this amendment did nothing to change the law of venue as to domestic corporations. Amendment No. 473 simply allows venue against foreign corporations "only in those counties where such suit would be allowed if the said foreign corporation were a domestic corporation." The plaintiffs argue that the § 6-3-5 proviso reading "provided, however, that an action against a foreign insurance corporation shall be commenced only in a county where it does business" creates an exception to the language in § 6-3-7 that restricts venue of personal injury actions against corporations. Interpreting that proviso in § 6-3-5 as the plaintiffs do, however, would allow the very thing Amendment No. 473 prohibits: it would allow a personal injury action against a foreign corporate insurer in any county in which that corporation did business, even though an identical personal injury action against a domestic corporate insurer could be brought only in the county where the injury occurred or in the county where the plaintiff resides, if the corporation did business there. Accordingly, this Court holds that § 6-3-5 makes venue proper in the county of the plaintiff's residence, if the defendant insurance company is "doing business" there, as defined by § 6-3-5(b).

2. Section 6-3-7
Section 6-3-7 has three parts. The first, concerning foreign corporations, provides that "[a] foreign corporation may be sued in any county in which it does business by agent." Amendment No. 473, equating foreign and domestic corporations for purposes of venue, does not render this first part without effect, because of the second part of § 6-3-7: "a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose." Amendment No. 473 affects these first two clauses of § 6-3-7 by allowing actions to be brought in any county in which the foreign corporation was "doing business by agent at the time the cause of action arose" as well as in any county in which the foreign corporation "does business by agent." This construction allows the statute to apply equally to domestic and foreign corporations, as Amendment No. 473 prescribes.
By virtue of Amendment No. 473, the last part of § 6-3-7, providing "that all actions against a domestic corporation for personal injuries must be commenced in the county where the injury occurred or in the county where the plaintiff resides if such corporation does business in the county of the plaintiff's residence," also applies to actions brought against foreign corporate defendants. Accordingly, Amendment No. 473 affects § 6-3-7 by making the clause on personal injury actions applicable to actions against foreign corporations as well as to actions against domestic corporations. This clause is an exception to the general rule that actions may be brought in any county in which the corporation does business by agent *214 or was doing business by agent at the time the cause of action arose.
The personal injury clause has been termed a "proviso" by this Court. Ex parte Townsend, 589 So.2d 711 (Ala.1991). The restrictive scope of this proviso has not been fully decided by this Court, nor has it been made clear by the legislature, as it relates to complaints that allege personal injury claims along with claims that are outside the scope of the proviso. It is proper, then, to strictly construe this proviso. Pace v. Armstrong World Industries, Inc., 578 So.2d 281 (Ala.1991) (if restrictive scope of proviso is in doubt, proviso is strictly construed, and only those subjects expressly restricted are freed from operation of statute); State Farm Mut. Auto. Ins. Co. v. Martin, 292 Ala. 103, 289 So.2d 606 (1974) (a proviso limits or modifies the enacting clause and should be strictly construed in accord with the general purpose of the enactment). The exception concerning personal injury actions would swallow the rule that venue of actions against corporations lies in any county in which the corporation does business by agent if this Court held that all "personal" actions are covered by the proviso, which uses the term "personal injury." Mobile Liners, Inc. v. McConnell, 220 Ala. 562, 126 So. 626 (1930) (any doubts about exception or proviso in statute must be judged on assumption that rule is broader than exception). The Court has recognized that venue for personal injury actions is limited by § 6-3-7 and thus holds that the proviso precludes application of the general rule in § 6-3-7 where the plaintiff is bringing only a personal injury action.
On the other hand, if the plaintiff is bringing several claims properly joined, and at least one of them is not a personal injury claim, then the proviso does not operate to require the plaintiff to bring the action in either the county where the wrongful act occurred or the county in which the plaintiff resides, if the corporation does business by agent there. At common law, the joinder of contract claims and tort claims was allowed. See Pyle v. Pizitz, 215 Ala. 398, 401, 110 So. 822, 824 (1926), holding it was not grounds for objection to a complaint, as a whole, that it contained some tort claims and some contract claims, since the claims arose out of the same subject matter. Because § 6-3-7 subjects a domestic corporation (and, through Amendment No. 473, a foreign corporation) to a civil action involving a contract claim in any county in which it does business, venue as to those cases involving contract claims is proper in Macon County, at least as to United Insurance Company of America, which does business in Macon County.[8]
Additionally, because venue is proper in Macon County as to United Insurance Company of America and because that corporation is a defendant in each action, the plaintiffs may join in their Macon County actions against that defendant their claims against the other defendants, regardless of where the individual defendants reside. See Louisville & N.R.R. v. Strickland, 219 Ala. 581, 122 So. 693 (1929) (under the common law, a joint, or joint and several, action may be brought in a county having jurisdiction of either defendant, whether that defendant is an individual or a corporation (Code 1923, § 9418)). See also Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228 (1962) (in wrongful death action, because venue was proper as to corporate defendant doing business in county where action was brought, venue was proper there also as to individual defendants who resided elsewhere); Eagle Iron Co. v. Baugh, 147 Ala. 613, 41 So. 663 (1906).
Fraud is a "personal injury" for purposes of venue. See Ex parte SouthTrust Bank, 619 So.2d 1356, 1357 (Ala.1993); Ex parte TranSouth Financial Corp., 608 So.2d 385, 386 (Ala.1992). The proviso in § 6-3-7 *215 restricts personal injury actions to the county in which the wrongful act occurred or to the county where the plaintiff resides, if the corporation "does business by agent" in that county. Each complaint alleging only personal injury claims must be transferred to the county of the plaintiff's residence, unless the wrongful acts occurred in some other county. Regardless of the counties in which the individual defendants reside, venue in those counties where the plaintiffs live (or in the counties in which the wrongful acts occurred) is proper as to all defendants. See Louisville & N.R.R. v. Strickland, 219 Ala. 581, 122 So. 693 (1929) (under the common law, a joint, or joint and several, action may be brought in a county having jurisdiction of either defendant, whether that defendant is an individual or a corporation (Code 1923, § 9418)).
To summarize, § 6-3-5 makes venue proper in the counties where these plaintiffs reside, regardless of the claims alleged in their complaints, and that section defines "doing business" for purposes of the provisions of that section. Any complaints alleging contract claims were properly filed in Macon County, under § 6-3-7; any complaints alleging personal injury claims only are subject to the clause in § 6-3-7 that limits personal injury actions against domestic corporations (and, through Amendment No. 473, foreign corporations) either to the county of the plaintiff's residence or to the county where the wrongful act occurred. Therefore, the trial judge is directed to vacate his order of December 22, 1994, transferring the petitioners' pending civil actions against United Insurance Company of America and others to the Circuit Court of Shelby County. He must then determine which complaints contain both contract claims and personal injury claims. Those complaints alleging only personal injury actions must be transferred, as the proviso in § 6-3-7 requires.
APPLICATION OVERRULED; OPINION OF JULY 14, 1995, WITHDRAWN; OPINION SUBSTITUTED; WRIT ISSUED.
ALMON, INGRAM, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., dissent.
HOOPER, Chief Justice (dissenting):
I respectfully dissent. I concur in Justice Houston and Justice Maddox's dissents, and I add the following.
None of the plaintiffs resides in Macon County. The alleged injurious acts did not occur in Macon County. None of the defendants resides in Macon County. Ala.Code 1975, § 6-3-5, is mainly for the benefit of the plaintiff, who would normally prefer to bring an action in his or her own home county, unless he or she was forum shopping. There is simply no reason for these plaintiffs to bring these actions in Macon County. Allowing them to pick the forum on the basis of the expected outcome leads one to conclude that they are forum shopping.
As for Macon County's relationship to these cases, it does not matter which statute this Court uses to analyze the situation presented here. Both § 6-3-5 and § 6-3-7, Ala. Code 1975, support the trial judge's order transferring these cases out of Macon County. An honest dispute exists as to what county they should be transferred to.
"The rules of statutory construction require that the words used in a statute be given their plain, natural, ordinary, and commonly understood meaning." Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1224 (Ala.1984), quoted in Ex parte New England Mut. Life Ins. Co., 663 So.2d 952 (Ala.1995). If this Court categorizes the complaints as "arising out of" the policies of insurance issued by United Insurance Company, then § 6-3-5 applies. If this Court categorizes the complaints as alleging personal injury, as the trial judge did, then § 6-3-7 applies. Under either statute, venue is not proper in Macon County. If any of the complaints allege both personal injury and contract causes of action "arising out of" the policies of insurance, then venue is still improper in Macon County.
As for actions "on the policy," § 6-3-5 should control if this Court is going to follow the plain, common, and ordinary meaning of the words of a statute. An insurance policy *216 is a contract. Schoepflin v. Tender Loving Care Corp., 631 So.2d 909 (Ala.1993) (defining an insurance contract in the context of the tort of bad faith refusal to pay); Knight v. Alfa Life Ins. Corp., 594 So.2d 1229 (Ala. 1992) (action alleging breach of life insurance contract, involving insured's failure to follow policy procedures as to medical examination and tests); Continental Assur. Co. v. Kountz, 461 So.2d 802 (Ala.1984) (action alleging bad faith refusal to pay and breach of insurance contract). A contract action in the insurance context will necessarily be an action "on the policy"; therefore, § 6-3-5 would apply to determine proper venue with respect to this contract action against United Insurance.
Amendment 473 states that a foreign corporation "may be sued only in those counties where such suit would be allowed if the said foreign corporation were a domestic corporation." The first part of § 6-3-5 states that venue is proper where the holder of the policy resides. That portion of the statute would apply to a domestic insurance corporation, and it does not require that the domestic corporation do business in the county where the action is filed. If foreign corporations are to be treated the same as domestic corporations for the purpose of determining proper venue, then a foreign insurance corporation may be sued in the county of the policyholder's residence without regard to whether it does business in that county or not. Venue in Macon County is, therefore, not proper, because no plaintiff resides in that county.
If this Court relies upon § 6-3-7 as the primary statute for determining venue for these cases, then this Court must decide whether the trial judge abused his discretion in transferring them out of Macon County and to Shelby County. "In cases involving the exercise of discretion by a lower court, a writ of mandamus may issue to compel the exercise of that discretion; however, it may not issue to control the exercise of discretion except in a case of abuse." Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990). "The burden of proving improper venue is on the party raising the issue, and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial court." Ex parte Ralston, 519 So.2d 488, 490 (Ala.1987).
Amendment 473 provides that foreign corporations will be treated the same as domestic corporations. In light of that constitutional amendment, § 6-3-7 states clearly that a foreign corporation may be sued in a personal injury action in the county where the injury occurred or in the county where the plaintiff resides if the corporation does business by agent in the county of the plaintiff's residence. Macon County fits neither of these criteria. Therefore, the trial judge correctly sought another more appropriate venue. Because venue is proper in more than one county, the trial judge applied Rule 82(d)(3), Ala.R.Civ.P., and, in accord with the unanimous agreement of the defendants, transferred the cases to Shelby County.
Given these facts, this Court should rely upon § 6-3-5 as the primary statute for determining proper venue. Leaving the cases in Macon County in contravention of § 6-3-5 would violate Amendment 473 to the Alabama Constitution of 1901. Under the plaintiffs' interpretation and this Court's interpretation of § 6-3-5, a foreign insurance corporation would be subject to being sued in any county in which it does business, an obviously broad range of venue, since United probably does business in most counties in Alabama. Yet, under § 6-3-5, a domestic insurance corporation would be subject to being sued only in the county of the policyholder's residence, if the defendant insurance corporation did business in that county also. Such a disparity in the treatment given foreign insurance corporations as compared with the treatment given domestic insurance corporations is unconstitutional, given the provisions of Amendment 473.
The majority's interpretation renders § 6-3-5 meaningless. Why would the legislature add a new statute in 1955 and state the counties in which an insurance company shall be sued and not really mean anything by it? Why did the legislature not just say, "A foreign insurance corporation may be sued in any county in which it does business"? Why would the statute even contain language concerning *217 the county where the policyholder resides? Why even have the statute? Section 6-3-7 already existed and, according to the majority's opinion, covers contract actions. This Court should not so easily dismiss a statute because it does not contain the word "only." The majority holding does not clarify this statute; it erases it. The majority opinion relates some informative history on old § 232 of the Alabama Constitution. It is for the most part irrelevant to the discussion of the venue problem in this case. Reliance upon § 232 of the Alabama Constitution of 1901 does not help the Court's interpretation, because Amendment 473 has erased the discriminatory effects of § 232. The plain, natural, ordinary, and commonly understood meaning of the words used in § 6-3-5 suggests that actions against insurance corporations shall be filed in the county where the policyholder resides.
The majority attempts to explain away the use of the word "shall" in § 6-3-5. Nevertheless, it is a significant word. The word "shall" is a mandatory term in § 6-3-5. See Pierson v. State, 677 So.2d 246 (Ala.1995) ("While conceding that the use of the word `shall' in the statute suggests a mandatory fine, the Court of Criminal Appeals held that the statute `"may also be construed as being permissive where the intent of the legislature would be defeated by making the language mandatory."' 677 So.2d at 246 (quoting Ex parte Brasher, 555 So.2d 192, 194 (Ala. 1989))."); State ex rel. Hartman v. Thompson, 627 So.2d 966, 970 (Ala.Civ.App.1993) ("Moreover, had the legislature intended for service as a holdover to be a mandatory part of the statutory term of office, it would not have used the permissive term `may,' but would have used the imperative term `shall,' as it did elsewhere in § 5-2A-3" and "In the absence of clear legislative intent to the contrary, the word `shall' is to be afforded a mandatory connotation when it appears in a statute," citing Prince v. Hunter, 388 So.2d 546 (Ala.1980).). Nothing in § 6-3-5 indicates a contrary legislative intent, and the majority today has made no showing whatever that if the language is considered mandatory it will defeat the legislature's intent. On the contrary, making the word "shall" to be permissive, as the majority does, defeats the legislature's intent. To construe the word "shall" in § 6-3-5 as meaning "may" makes that section a permissive statute. The majority causes the permissive statute (§ 6-3-7) to have priority over the mandatory statute (§ 6-3-5). In addition, § 6-3-7 was enacted earlier. It would not follow logically that the legislature enacted a mandatory statute and intended for an earlier permissive statute to override it.
Section 6-3-7 is the general statute covering venue for civil actions against foreign corporations, and § 6-3-5 is the more particular statute covering foreign insurance corporations. I do not consider the statutes to conflict. However, the majority opinion could be interpreted as asserting the existence of a conflict between the two statutes as to contract actions against insurance corporations. In case of such a conflict, the specific statute is to be followed rather than the general statute. Additionally, I note that the portion of § 6-3-7 dealing with personal injury actions against corporations was added to that section in 1903. Section 10471, Ala.Code 1923, amended that portion to apply it only to domestic corporations. Yet § 6-3-5 became law in 1955. I think it is clear that § 6-3-5 was intended to supplement and qualify § 6-3-7.
I would also add that I have found only four opinions written since 1954 that even cite § 6-3-5. None of these opinions carefully analyzed the statute in regard to the question of improper venue. Those cases raised the issue of forum non conveniens and never directly addressed the meaning of the statute. See Ex parte New England Mut. Life Ins. Co., 663 So.2d 952 (Ala.1995); Ex parte Blount, 665 So.2d 205 (Ala.1995); Ex parte Bloodsaw, 648 So.2d 553 (Ala.1994); and Ex parte City of Fayette, 611 So.2d 1032 (Ala. 1992) (overruled on other grounds, Ex parte Alabama Power Co., 640 So.2d 921 (Ala. 1994)). That statute apparently has been neglected for years. Nevertheless, the majority opinion's interpretation appears to be unconstitutional when considered in light of Amendment 473.
The majority seems to avoid the plain meaning of § 6-3-5 by citing Amendment *218 473. Amendment 473 states in relevant part that foreign corporations "may be sued only in those counties where such suit would be allowed if the said foreign corporation were a domestic corporation." The language of Amendment 473 serves to restrict venue in an action involving a foreign corporation to those counties where venue would be proper if the action was against a domestic corporation. In other words, a foreign corporation cannot be treated unequally because of the fact that it is a foreign corporation. The amendment does not erase the protection provided a foreign insurance corporation by § 6-3-5. Old § 232 of the Alabama Constitution allowed a plaintiff to sue a foreign corporation in any county where it did business. Amendment 473 amended that section to allow such an action only in a county where venue would be proper in an action against a domestic corporation. Amendment 473 is an anti-forum shopping amendment. The majority has turned it on its head. Interpreting Amendment 473 raises the following question: May a domestic insurance corporation be sued on a policy in a county where the plaintiff does not reside? The plain wording of § 6-3-5 indicates that it cannot. If a domestic insurance corporation may not, then neither may a foreign insurance corporation. The majority has erased the curative effect of Amendment 473. It has also nullified § 6-3-5 by ignoring that section. It does not matter which statute this Court follows in determining proper venue in these casesvenue is not proper in Macon County. Therefore, the joinder of the fraud and contract actions has no effect upon Judge Howard Bryan's order transferring these cases out of Macon County. "It is a general rule that no one has any vested right to any particular remedy or form of procedure, and that the matter of venue belongs to the procedure or remedy, and is no part of the right itself." Home Protection of North Alabama v. Richards & Sons, 74 Ala. 466, 470 (1883). If one considers this change of venue to have been granted on the basis of the doctrine of forum non conveniens, one must conclude that Judge Bryan did not abuse his discretion in transferring these cases out of Macon County. In fact, the majority does not rule out that option. It merely holds that venue is proper in Macon County. It does not address whether the trial judge can transfer these cases to another county based on the doctrine of forum non conveniens.
Forum shopping is a horrendous abuse of the judicial system. The trial judge did not clearly err in transferring these cases out of Macon County. In fact, he did his duty. I would deny the mandamus petition as it relates to Judge Bryan's holding that venue is improper in Macon County. The clear wording of Ala.Code 1975, § 6-3-5, states that proper venue for an action "on the policy" is the county in which the policyholder resides. Section 6-3-7 provides that venue is proper in (1) the county where the injury occurred, or (2) the county where the plaintiff resides. Macon County does not qualify under either § 6-3-5 or § 6-3-7.
MADDOX, Justice (dissenting).
On application for rehearing, the majority has withdrawn its original opinion and has substituted another; unfortunately, the majority has reached the same result it reached in that first opinion on July 14, 1995that Macon County is a proper venue for these cases although not one of the 16 plaintiffs and not one of the individual defendants resides there.
In reaching that result, the majority holds that the laws of Alabama authorize these plaintiffs to file these claims against a corporate defendant in Macon County and force not only that corporate defendant but the individual defendants, who admittedly committed no wrongful acts in Macon County, to be tried by a jury in Macon County.[9] The *219 trial judge, recognizing how unfair this was, transferred the cases to Shelby County. In doing that, of course, he erred, because Shelby County is not the most convenient forum for the trial of all these cases either. Consequently, I cannot agree with the majority's interpretation of Ala.Code 1975, § 6-3-5, but instead concur with Justice Houston's views expressed in his dissenting opinionthat the settled rules of statutory construction require that the provisions of § 6-3-5 be construed to require a transfer.[10] I also agree with Justice Houston that the trial judge erred, however, in transferring all of the cases to Shelby County, but I desire to state some additional views on the subject of venue of actions such as these, especially as it relates to legislative intent in allowing trial judges, and sometimes requiring them, in the interest of justice, to transfer a case to a more convenient forum.[11]
In Alabama, the venue of actions is governed by provisions of the state Constitution, which vests in the legislative branch the sole power to govern venue in both criminal and civil cases. This Court, except when using its power to interpret the intent of a law passed by the legislature or when interpreting a provision of the Constitution, has no authority to determine the place where a civil action can be filed. In fact, when the people ratified Amendment 328 to their Constitution, they specifically stated that this Court, even though granted the power to adopt rules governing practice and procedure, could not "abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein." Amend. 328, § 6.11, Const. of Ala.1901.
As I interpret Alabama law, these defendants have a substantive right not to be sued in a county unless the legislature has authorized it or required it, and they have a right to have an action transferred to a more convenient forum in the interest of justice. It is clear to me that during the past decade the legislature has been limiting the right of parties to pick the forums where their actions can be brought, and the majority, by interpreting legislative intent so as to authorize a plaintiff to choose a forum where he or she does not reside, where the individual defendants do not reside, and where the event giving rise to the cause of action did not occur, applies a statutory interpretation that seems to run contrary to what the legislature intended.
Assuming, however, that the law did permit the individual defendants to be sued in Macon County, where neither they nor the plaintiffs reside, does the law give them any rights? Of course, it does. Assuming further that the corporate defendant could properly be sued in Macon County, does the law give the corporate defendant any rights? Of course it does. The law provides that, in the interest of justice, the trial judge, using the provisions of law, has the authority to transfer a case to a more convenient forum.[12]
*220 It seems quite apparent to me that the legislature, in adopting the forum non conveniens statute, intended to change the law relating to a plaintiff's right to choose the forum and provided that, even if a civil action has been filed in an appropriate venue, "any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed." (Emphasis added.) In fact, this Court, last term, using this principle of law, required a trial judge to transfer a case out of a particular county, even though the plaintiff had moved to the county and resided there at the time he filed his action. Ex parte New England Mutual Life Ins. Co., 663 So.2d 952 (Ala.1995).[13] The majority cites New England Mutual for the proposition that the venue statutes must be read in pari materia, but it seems to ignore the fact that in that case this Court ordered a transfer.
New England Mutual addressed the intent of the legislature in adopting the forum non conveniens statute:
"The doctrine of forum non conveniens was formally adopted in this state and codified at § 6-3-21.1, Ala.Code 1975; the doctrine has a field of operation only where an action is commenced in a county in which venue is appropriate. Transfers under this Code section are within the discretion of the trial judge. The purpose of the doctrine is to prevent the waste of time, energy, and money and also to protect witnesses, litigants, and the public against unnecessary expense and inconvenience. Ex parte Townsend, 589 So.2d 711, 714 (Ala.1991).... The burden of proof under this doctrine is on the defendant to prove to the satisfaction of the trial court that the defendant's inconvenience and expense of defending the action in the venue selected by the plaintiff are such that the plaintiff's right to choose the forum is overcome. Stated differently, the transferee forum must be significantly more convenient than the forum in which the action is filed by the plaintiff, to justify transfer. Ex parte Townsend, 589 So.2d at 714."
663 So.2d at 956.
In that case, the Court held that the legislature had intended to grant a trial judge *221 broad discretionary power to transfer a case when "the defendant's inconvenience and expense of defending the action in the venue selected by the plaintiff are such that the plaintiff's right to choose the forum is overcome." 663 So.2d at 956.
Given our holding in New England Mutual then, even assuming that the majority has correctly interpreted the statutes as authorizing the filing of these actions in Macon County, that does not mean that the trial judge was powerless to transfer them, because the legislature, in § 6-3-21.1, in granting trial judges the power to transfer cases, has used the words "in the interest of justice." (Emphasis added.) The legislature must have intended for those words to have meaning, or else it would not have placed them in the statute. What do they mean?
In my opinion, the legislature, in adopting the forum non conveniens statute that includes these words, intended to vest in the trial courts, and in this Court and the Court of Civil Appeals, the power to transfer a case when the "interest of justice" requires a transfer. In 1987, the legislature, after extensive debate, adopted the statute that the trial judge followed in transferring these cases. In my opinion, when the trial judge determines that a plaintiff is guilty of "forum shopping" and that the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the statute provides that the trial court "shall" transfer the cause. What has the Supreme Court of the United States said about "forum shopping," which is obviously involved in these cases? That Court has stated that because plaintiffs are allowed a choice of forum by statute, a plaintiff may be "under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). In another case, the United States Supreme Court, applying the forum non conveniens doctrine, said a transfer under that doctrine is proper when:
"an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would `establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the `chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"
Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981), quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 831-32, 91 L.Ed. 1067 (1947).
I realize that a defendant moving for a transfer under the doctrine of forum non conveniens has the initial burden of showing that the selected forum is inconvenient. The United States Supreme Court, in the Gulf Oil case, addressed this issue and discussed the competing private and public interests involved:
"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, `vex,' `harass,' or `oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn *222 of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."
330 U.S. at 508-09, 67 S.Ct. at 843. For a discussion of the issue presented here, see, "Review and Appeal of Forum Non Conveniens and Venue Transfer Orders," 59 Geo. Wash.L.Rev. 715 (1991).
I am of the opinion that the legislature, by adopting the forum non conveniens statute, which allows the transfer of an action that has been filed in a proper forum, intended to promote the concept of fairness and justice and to provide trial judges with the power to transfer a case, if the trial judge, in the exercise of broad discretion, determines that, in the words of the legislation, "the interest of justice" requires it. Blair v. Container Corp. of America, 631 So.2d 919, 921 (Ala. 1994); Ex parte Canady, 563 So.2d 1024, 1025 (Ala.1990).
The trial judge stated his reasons for transferring these cases. The evidence shows that none of the parties or witnesses resides in Macon County; that the only contact with Macon County is the fact that a defendant corporation does business by agent in Macon County; and that the filing of this case in Macon County was an intentional act of forum shopping.
I close this dissent by asking this question: How can permitting 23 plaintiffs to sue individual and corporate defendants in a county where none of the individual plaintiffs and none of the individual defendants resides, and where none of the alleged wrongful acts occurred, be "in the interest of justice"? It would seem to me that the most convenient forums would be the counties where the individual plaintiffs reside and where the corporate defendants apparently did the business that led to these disputes, and where the alleged wrongful acts occurred. The public interest in the fair application of venue statutes is apparent, and I believe the trial judge here carried out the intent of the legislature. Consequently, I must respectfully dissent.
HOOPER, C.J., and HOUSTON, J., concur.
HOUSTON, Justice (dissenting).
While I join Justice Maddox's dissent, I also choose to write specially.
Alabama Code 1975, § 6-3-5, applies to all corporations that issue policies or certificates of insurance of any kind. The defendants in these actions are corporations that issue policies or certificates of insurance. Under § 6-3-5, these defendants are "subject to a civil action on any such policy or certificate in the county where the holder of the policy or certificate resides." Therefore, the proper venue for these contract actions must be determined by looking to § 6-3-5. The contract actions must be brought in the county where the holder of the policy resides. Insofar as the tort actions are concerned, Ala. Code 1975, § 6-3-7, applies; it provides that "all actions against a ... corporation for personal injuries must be commenced in the county where the injury occurred or the county where the plaintiff resides." [14] None of the injuries occurred in Macon County and none of the plaintiffs reside in Macon County; therefore, the trial court correctly ruled that Macon County was not a proper venue for these actions. However, the trial court erred in transferring these actions to Shelby County, where, likewise, none of the plaintiffs resides and none of the injuries occurred. I would issue the writ and vacate the trial court's order transferring these actions to Shelby County, and I would instruct the trial court to transfer these actions to the counties in which the plaintiffs reside. The petition states that the following plaintiffs reside in Elmore County: Mary L. Gauntt; Rosa O. Brown; Ola Mae Henderson; Dorothy J. Mays; Katherine Adams; Loretta *223 Gilder; Catherine Talley; Nellie Rogers; Artis Rogers; Shirley Williams; Don Guary; and Bonnie Guary. The petition states that the following plaintiffs reside in Montgomery County: Alberta Harmon; Betsy Dorsey; Fannie Dorsey; Louise Bell Artis; Pauline Ellis; Vickie D. Johnson; Patricia Ann Knight; and Eleanor B. Wilson. The petition also indicates that the plaintiffs Anita Simon Walker and Nell Simon Dennis reside in Chilton County and that the plaintiff Pearl Gauntt resides in Tallapoosa County.
HOOPER, C.J., and MADDOX, J., concur.

On Second Application for Rehearing
SHORES, Justice.
APPLICATION OVERRULED.
ALMON, INGRAM, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, and HOUSTON, JJ., dissent.
HOUSTON, Justice (dissenting) (dissenting opinion modified on denial of second application for rehearing, May 3, 1996).
The majority opinion has implicitly overruled the discussion of Ala.Code 1975, § 6-3-5, in Ex parte New England Mutual Life Insurance Co., 663 So.2d 952 (Ala.1995). I concurred in New England Mutual. I still concur with the result reached in New England Mutual; however, I would modify New England Mutual as it relates to the discussion of § 6-3-5, for the following reason.
The phrase "a civil action on any such policy or certificate" implies an action based on rights or obligations of the parties arising out of the terms of the policy or certificate and not rights or duties implied in law.
Alabama Code 1975, § 6-3-5, applies to all corporations that issue policies or certificates of insurance of any kind. The defendants in these actions are corporations that issue policies or certificates of insurance. Under § 6-3-5, these defendants are "subject to a civil action on any such policy or certificate in the county where the holder of the policy or certificate resides." Therefore, the proper venue for these contract actions must be determined by looking to § 6-3-5. The contract actions must be brought in the county where the holder of the policy resides. Insofar as the tort actions are concerned, Ala. Code 1975, § 6-3-7, applies; it provides that "all actions against a ... corporation for personal injuries must be commenced in the county where the injury occurred or the county where the plaintiff resides." [1] None of the injuries occurred in Macon County and none of the plaintiffs reside in Macon County; therefore, the trial court correctly ruled that Macon County was not a proper venue for these actions.
Adding to the tortured history of this case is the fact that in all of the confusion over venue as to the corporate defendants, I, in my original dissent, overlooked the fact that there was an individual defendant who resided in Shelby County. Venue was proper as to him in Shelby County. Ala.Code 1975, § 6-3-2(a)(2), (3). Therefore, under Rule 82(c), A.R.Civ.P., venue was proper in Shelby County and the trial court did not err in transferring this action to Shelby County.
HOOPER, C.J., and MADDOX, J., concur.
NOTES
[1] Section 6-3-7 provides:

"A foreign corporation may be sued in any county in which it does business by agent, and a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose; provided, that all actions against a domestic corporation for personal injuries must be commenced in the county where the injury occurred or in the county where the plaintiff resides if such corporation does business by agent in the county of the plaintiff's residence."
[2] Amendment No. 473 changed § 232 so that venue of actions against a foreign corporate defendant is proper where venue would be proper for an action against a domestic corporation.
[3] We do not rely on Rule 82 for our decision in this case, and although Roland Pugh Min. Co. v. Smith, 388 So.2d 977, 979 (Ala.1980), deals with venue as to multiple defendants, this Court properly noted in that case that "Rule 82(c), A.R.C.P., simply restates the statutes as heretofore construed by this Court."
[4] In the current statute, § 6-3-5, subsection (a) provides:

"Any person, firm or corporation that issues policies or certificates of insurance of any kind shall be subject to a civil action on any such policy or certificate in the county where the holder of the policy ... resides ...; provided, however, that an action against a foreign insurance corporation shall be commenced only in a county where it does business."
[5] Before the adoption of the Constitution of 1901, this Court had construed the precursor of § 232, holding that Code 1886, § 2642, "in so far as it relates to foreign corporations, is merely affirmatory of the constitution." Sullivan v. Sullivan Timber Co., 103 Ala. 371, 373, 15 So. 941, 941 (1894). Then, as now, the constitution did not include the phrase "by agent," but the statute did. The Court deemed this difference immaterial: "When a foreign corporation `does business' within the State, of necessity the business is done by and through agents; and the necessity is recognized by the constitution and by the statute." Id., 103 Ala. at 379, 15 So. at 944. The framers of a constitution are presumed to have known of a pre-existing decision of this Court construing a constitutional provision. Board of Revenue of Jefferson County v. State ex rel. City of Birmingham, 172 Ala. 138, 149, 54 So. 757, 760 (1910). Thus, after the adoption of the 1901 Constitution, the Court continued to require, both as to foreign corporations and as to domestic corporations, that the corporation be doing business "by agent" in a particular county for venue to be proper in that county.
[6] The phrase "doing business by agent" has been interpreted less restrictively in recent cases. Tidwell v. Louisiana-Pacific Corp., 517 So.2d 602, 603 (Ala.1987) (unnecessary for a corporation to have an agent physically present and conducting business in a county for venue to be proper there); accord, Ex parte Reliance Ins. Co., 484 So.2d 414, 417 (Ala.1986). This less restrictive application derives from the expansion of the concept of personal jurisdiction over corporations that began with International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
[7] Section 232 does not apply to domestic corporations. Harris v. Elliott, 277 Ala. 421, 171 So.2d 237 (1965).
[8] United Insurance Company of America is a subsidiary of the defendant Unitrin, Inc. The other corporate defendants, United Casualty Insurance Company, Union National Life Insurance Company, and Union National Fire Insurance Company, are wholly owned subsidiaries of United Insurance Company of America. The defendant George McDonald is United Insurance Company's regional manager in Alabama; one group of individual defendants are current or former employees of one or more of the defendant corporations; the remaining individual defendants are officers or directors of one or more of the defendant corporations.
[9] The salient facts are:

(1) None of the plaintiffs resides in Macon County now, and none of them resided there either at the time they filed these complaints or at the time any of the alleged wrongful acts occurred.
(2) None of the individual defendants in any of the cases resides in Macon County now, and none of them resided there either at the time the complaints were filed or at the time any of the alleged wrongful acts occurred.
(3) The underlying actions are personal actions, although each apparently arises out a relationship between an insured and an insurer and the alleged agents of the insurer.
(4) The plaintiffs' only basis for filing the actions in Macon County is that some of the corporate defendants do business in that county.
(5) None of the alleged wrongful acts or omissions committed against any plaintiff occurred in Macon County and none of the plaintiffs suffered any injury in Macon County.
[10] The relevant portion of Ala.Code 1975, § 6-3-5, provides:

"(a) Any person, firm or corporation that issues policies or certificates of insurance of any kind shall be subject to a civil action on any such policy or certificate in the county where the holder of the policy or certificate resides, and the summons may be executed by serving a copy of the summons and complaint upon any officer or agent of the insurer; provided, however, that an action against a foreign insurance corporation shall be commenced only in a county where it does business."
(Emphasis added.)
[11] See, Ex parte New England Mutual Life Ins. Co., 663 So.2d 952 (Ala.1995).
[12] Ala.Code 1975, § 6-3-21.1(a), reads as follows:

"(a) With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein."
(Emphasis added.)
This Code section is taken from Act No. 87-181, Ala. Acts 1987, p. 243, which was part of the so-called "tort reform" package of bills adopted by the legislature; when it adopted that package of bills, the issues of venue and the principle of forum non conveniens were important issues being considered by the legislature. Robert D. Hunter, who served as the Governor's special counsel on tort reform at the time those bills were adopted, specifically stated the following regarding the doctrine of forum non conveniens:
"The ability to transfer cases within Alabama for the convenience of parties and witnesses and in the interest of justice was denied Alabama courts prior to passage of Alabama Code section 6-3-21.1 in this tort reform effort. Courts are now required to transfer a case to a county in which the case originally might have been filed if the convenience of the parties and witnesses or the interests of justice so dictate. Although the statute uses the mandatory term `shall,' judicial discretion will necessarily be involved in considering the factors of convenience and the interest of justice.
"As introduced, the forum non conveniens proposal referred only to a `change' of venue. Although the Alabama Constitution grants courts the power to `change' venue, existing statutes speak in terms of both a `change' and a `transfer' of venue. One `change' of venue for cause is permitted any party, while a defendant may move for `transfer' of venue as provided in the Alabama Rules of Civil Procedure. Those who drafted section 6-3-21.1 were of the view that venue was `changed' and actions were `transferred,' a view apparently shared by those who drafted Alabama Rule of Civil Procedure 82. During the course of Senate debate, the reference was expanded to include `change or transfer' of venue. The language was altered to insure that section 1(b), which specified the new right, was considered cumulative to previously existing rights."
"Alabama's 1987 Tort Reform Legislation," 18 Cumb.L.Rev. 289 (1988).
[13] In that case, the corporate defendant was sued in Barbour County by a plaintiff who lived in Barbour County at the time the action was filed. The corporate defendant asked the trial judge to transfer the case to Montgomery County, but the trial judge refused. This Court, on petition of the corporate defendant and the individual defendant, issued a writ of mandamus requiring the transfer, based on the conclusion that the petitioners had clearly shown that Barbour County was not the most convenient forum. In fact, as stated above, in that case this Court ordered the trial judge to transfer the case out of the county where it was filed, even though the plaintiff resided there.
[14] Although § 6-3-7 reads "domestic corporation," Amendment No. 473 to the Constitution of Alabama of 1901, which was proclaimed ratified on April 1, 1988 (Proclamation Register No. 6, p. 39), provides, in pertinent part: "Any foreign corporation ... may be sued only in those counties where such suit would be allowed if said foreign corporation were a domestic corporation." Therefore, the quoted provision of § 6-3-7 applies to all corporations.
[1] Although § 6-3-7 reads "domestic corporation," Amendment No. 473 to the Constitution of Alabama of 1901, which was proclaimed ratified on April 1, 1988 (Proclamation Register No. 6, p. 39), provides, in pertinent part: "Any foreign corporation ... may be sued only in those counties where such suit would be allowed if said foreign corporation were a domestic corporation." Therefore, the quoted provision of § 6-3-7 applies to all corporations.